UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JOHN SCOTT CARROLL )
 )
V. ) NO. 2:10-CV-138
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act were administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 12].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 38 years of age, a "younger" individual, at the time his applications were denied. He has past relevant work experience as welder, which was identified by the Vocational Expert at the administrative hearing as medium and unskilled. He has a high school education. (Tr. 29). He asserts that he is disabled due to Graves' Disease (a form of hypothyroidism) with attendant pain and fatigue, depression and anxiety.

The plaintiff's medical history is summarized in the Commissioner's brief as follows:

> Dr. Richard Jordan, M.D., examined Plaintiff in November 2003 for hyperthyroidism (Tr. 203-04). Plaintiff reported tiredness, weight loss, tremor, increased perspiration, and some heat intolerance (Tr. 204). Dr. Jordan suspected that Plaintiff "almost certainly" had Graves' disease (Tr. 203). In March 2005, Plaintiff complained of having headaches "for many years," but Dr. Jordan did not believe they were related to Graves' disease (Tr. 197). In May 2007, Dr. Jordan noted that Plaintiff did some fairly significant manual labor, as he continued working, and he complained that on some days he fatigued more easily than others (Tr. 191). However, Plaintiff was overall doing well on his medication for hyperthyroidism (Tr. 191).
> Plaintiff also received treatment from Dr. Donald Tarr, D.O., a family practitioner, prior to his alleged onset date for his hyperthyroidism, along with other conditions including headaches, back pain, and anxiety (Tr. 210, 217, 221, 286, 291).
> In February 2008, one month after Plaintiff's alleged onset date, Dr. Krish Purswani examined Plaintiff and noted mostly normal findings, other than some decreased range of motion in his hips, neck, and back; Plaintiff was neurologically intact, and had normal muscle strength in his arms and legs, normal reflexes, and a normal tandem gait (Tr. 358-59). Based on reports from Plaintiff and his examination findings, Dr. Purswani diagnosed Plaintiff with Graves' disease, myalgias (muscle pain), insomnia, headaches, chronic low back pain, degenerative disc disease (per patient), abdominal pain, and anxiety (Tr. 356-61). Dr. Purswani opined that Plaintiff could lift 20 pounds for 50% of an eight hour day, could stand and walk with breaks

2

for a total of seven hours out of eight, and could sit for eight hours out of eight (Tr. 360). An x-ray of Plaintiff's left hip following Dr. Purswani's examination showed mild osteoarthritis (Tr. 361).

Plaintiff continued to receive treatment from Dr. Tarr through June 2009 for continued complaints associated with his previous diagnoses, along with new complaints associated with melena (passage of dark stools stained with blood) (Tr. 396, 450).

In February 2008, Dana Skaggs, M.A., examined Plaintiff and opined that he had threads of paranoid ideation and a prominent emphasis on Jesus and the bible, but did not appear to meet any diagnostic criteria based on her interview (Tr. 369-70). She assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60 (Tr. 370), indicating that he was experiencing no more than moderate symptoms or difficulty in any mental function. Ms. Skaggs opined that Plaintiff could understand and use simple information and directions in a vocational setting; had a marginal ability to comprehend complex instructions; had a questionable ability to maintain persistence and concentration because of low frustration tolerance due to pain, decreased ability to focus, and a history of not applying himself to tasks of no interest to him; and his social relationships were moderately impaired (Tr. 369).[1]

In September 2008, Dr. Frank Kupstas, Ph.D., a psychologist, reviewed Plaintiff's mental health records and opined that Plaintiff could interact with the general public with some difficulty, but was otherwise not limited (Tr. 420, 424).

[Doc. 13, pgs. 3-5].

At the administrative hearing, the plaintiff testified regarding the symptoms of Graves' Disease, such as pain and fatigue, and his medications. He also testified regarding his depression and anxiety (Tr. 23-25). He testified that he lived alone in a house. He was able to drive some, cook some meals in a microwave, and go to the grocery store with help. He went to church once a week. He reported problems standing and sitting for long periods of time. (Tr. 25-28).

Vocational expert Cathy D. Sanders testified at the hearing. Ms. Sanders was asked to assume a person with plaintiff's physical and vocational characteristics. She was asked

---

[1] Bear in mind that Ms. Skaggs examined the plaintiff at the behest of the Disability Determination Section of the State of Tennessee.

to assume the person had the residual functional capacity for light work "with restrictions regarding disability to do basic work-related activities consistent with Exhibit 12F..." which was the form provided by Dr. Kupstas, the non-examining state agency psychologist. When asked if there were jobs such a person could perform, she identifed the jobs of food preparation, cafeteria line server, dishwasher, cleaner, grounds maintenance, and arcade and laundry attendant. She identified these as "unskilled, entry level jobs," and stated that there were 18,400 such jobs in the region and 2.75 million in the national economy. If he were unable to tolerate an 8 hour workday or missed more than two days per month on a sustained basis, there would be no jobs. (Tr. 29-30).

  In his hearing decision, the ALJ found that the plaintiff had severe impairments of Graves' Disease, depression and anxiety. (Tr. 12). He found, based upon Ms. Skaggs' evaluation, that the plaintiff had a mild restriction in activities of daily living, and moderate difficulties in social functioning. Also based upon Ms. Skaggs' evaluation, the ALJ found "with regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant is able to understand simple instructions, but has questionable ability to maintain persistence and concentration." (Tr. 13). The ALJ then found that the plaintiff had "the residual functional capacity to perform a range of simple, light work..." in that he could sit for six hours and stand and walk for six hours in an eight hour day, and was "able to interact with the general public with some difficulty." (Tr. 13-14). To support this he cited the reports of Dr. Kurswani and Ms. Skaggs, who each "submitted a detailed report which included a clinical interview and observations." He found "that the examination was thorough and consistent with the evidence of record." He stated that he would give the

4

reports of Kurswani and Skaggs "substantial weight." He also found that the plaintiff's testimony was not credible. (Tr. 15).

The ALJ rejected the opinions of the state agency non-examining doctors regarding plaintiff's physical capabilities, which indicated a range of medium work. (Tr. 15). He did not accept, reject, or otherwise mention Exhibit 12F, the psychological report of Dr. Kupstas, in his decision. Since plaintiff's past relevant work as a welder required medium exertion, the ALJ found that he could not return to that occupation. Since he could perform a reduced range of light work, the ALJ relied upon the testimony of Ms. Sanders, the VE, and found that plaintiff could perform the jobs she identified. He stated that "pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Based upon Ms. Sanders' testimony, the ALJ concluded that there were a significant number of jobs the plaintiff could perform. Accordingly, he was found to be not disabled. (Tr. 16-17).

Plaintiff's initial argument is that the ALJ erred in not finding the plaintiff fully credible due to the fact that Graves' disease "would reasonably be expected to result in the fatigue and weakness of the plaintiff." Indeed, Graves' Disease is a very serious illness. However, a diagnosis of Graves' Disease does not automatically render an individual disabled under the Social Security Act, nor does it foreclose a finding by an ALJ that a claimant is not totally credible. The Commissioner, having no physical capacity medical assessment from any treating source, obtained the consultative examination of Dr. Kurswani, and the Court agrees with the ALJ that his report is detailed and his examination was thorough. From a physical standpoint, it provides substantial evidence for the both the ALJ's

5

RFC finding and his credibility determination, along with the ALJ's observations and the plaintiff's activities.

Plaintiff also argues that the ALJ did not include Dr. Kurswani's mention of "breaks" in his question to the VE. Dr. Kurswani stated that "he can stand and walk with breaks for a total of 7 hours in an 8-hour day..." Obviously, there would be some breaks, including presumably a meal break. While many of the jobs identified by the VE are "standing" jobs, such as cleaning and dishwashing, 7 hours total of standing is not incompatible with the full physical range of light work.

Plaintiff maintains that hypothetical question to the VE was "misleading and incomplete," and "requires the vocational expert to interpret the medical evidence." From a physical standpoint, as noted about, the Court agrees with the Commissioner that the report of Dr. Kurswani provides substantial evidence for that portion of the hypothetical regarding an ability to physically perform light work. Also, it was not error for the ALJ to ask the VE to consider the restrictions set out in a medical report, in this case Exhibit 12F from the state agency psychologist. But as noted below, there were other *substantive* problems with the ALJ's utilization of Dr. Kupstas' report.

Plaintiff also asserts that the ALJ erred in not asking the VE if her listing of jobs which the plaintiff could perform was consistent with the *Dictionary of Occupational Titles* ["DOT"]. *Social Security Ruling 00-4p,* issued December 4, 2000, deals with the procedures to be used to make sure there is not a conflict between the VE's testimony and DOT. The ruling specifically states that "at the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, ***on the record*** as to whether or not there is

6

such consistency." *Id*, pg. 2. (Emphasis added).

There is no doubt that the plain language of this Ruling imposes a "duty" on the ALJ to inquire on the record at the hearing of the VE whether or not there is any inconsistency between his or her opinion of available jobs and the DOT requirements for those jobs. The Commissioner asserts that the error is harmless. The Court believes that such an error can be harmless, and the plaintiff has not shown any discrepancies between the DOT and the jobs the VE found that the plaintiff could perform with the restrictions set out in the hypothetical question.

However, there is a much more serious issue left to be addressed. Plaintiff asserts that the ALJ erred in his finding of RFC and in the question posed to the VE by making no mention of Ms. Skagg's opinion regarding plaintiff's "questionable ability" to maintain persistence and concentration." The ALJ, for the portion of the hypothetical dealing with plaintiff's RFC from an emotional standpoint, utilized the opinion of Dr. Kupstas, not the report of Ms. Skaggs. If he had utilized Exhibit 6F with Ms. Sanders instead of Exhibit 12F, the Court would recommend that the Commissioner be affirmed. But there are clearly additional limitations set out in Ms. Skaggs' opinion.

Not only are there additional restrictions, but the ALJ *found that the plaintiff had them*, stating in the hearing decision that plaintiff had moderate difficulties in concentration, persistence or pace and that he had "questionable ability to maintain persistence and concentration." (Tr. 13). He based this finding on Ms. Skaggs' report and gave her report substantial weight. But that finding was not in the question to the VE, nor was any mention made of her report at the hearing.

7

Unfortunately for the Court, the Commissioner has addressed this issue by attacking Ms. Skaggs' report which was obtained *by the government* as part of the disability determination process. Some of these arguments, sadly, are misstatements of what the ALJ found. Others are resoundingly illogical.

In Document 12, the Commissioner's brief, at page 8, the Commissioner truthfully states the that "Dr. Kupstas's report clearly shows that he opined that Plaintiff could interact with the general public with some difficulty, but was otherwise not limited." The disturbingly inaccurate statement comes in the next paragraph. The brief states that "although the ALJ did not specifically adopt her (Ms. Skaggs') opinion that Plaintiff had a questionable ability to maintain persistence and concentration, he acknowledged that he considered it (Tr. 15)." However, *at Tr. 13, the ALJ* **stated** *"with regard to concentration, persistence or pace, the claimant has* **moderate** *difficulties."* He does not say this is Ms. Skaggs' opinion, or that he disagrees with her, but that this is, in fact, the plaintiff's degree of limitation. The "moderate" mental limitations were sufficient for the ALJ to conclude that the plaintiff could not perform the full range of light work because of them.

The Commissioner next states that "plaintiff has not shown why the ALJ needed to include this limitation in his residual functional capacity finding..." and that "Dr. Kupstas opined-after reviewing Plaintiff's mental health records, including Ms. Skaggs evaluation- that Plaintiff did not have any significant limitations in sustaining concentration and persistence." This raises an interesting conundrum. Since plaintiff was not receiving mental health treatment, Ms. Skaggs' evaluation *was* the mental health record. To be sure, a non-examining state agency physician or psychologist is not required to agree with a consultative

8

examiner's opinion, although the non-examiner's opinion must be well supported by the record as whole to "trump" an examining source's opinion. However here, that examining source was all the information Dr. Kupstas had. He offers no explanation for disagreeing, or what he looked at that led him to conclude Ms. Skaggs was wrong. In this vacuum, Ms. Skaggs' opinion fills the bill of substantial evidence more than the state agency psychologist's does.

The most offensive argument raised by the Commissioner comes next. On page 9 of the brief, he states "because Ms. Skaggs was not an acceptable medical source, it was reasonable for the ALJ to provide the vocational expert with Dr. Kupstas's opinion concerning concentration and persistence, rather than Ms. Skaggs's opinion." The Commissioner then quotes from the regulations and Social Security Ruling that state that an opinion from someone who is not an "acceptable medical source" is not entitled to the same "deference" as an opinion from someone who is. Assuming that the Commissioner is correct in his argument that Ms. Skaggs, having a Master of Arts degree rather than a Ph.D. in psychology, is therefore not an "acceptable medical source," then the question becomes why would the Commissioner, at taxpayer expense, send someone to be evaluated by a person that the Commissioner later asserts was not qualified to give an opinion on the subject for which the claimant was referred? Why has the Commissioner utilized her services in numerous other cases to good effect and championed her evaluations when they were favorable? All of this is academic because the ALJ claimed to have given her opinion substantial weight and "found" the plaintiff to be limited to the extent she opined.

The ALJ's hypothetical question to the VE, his RFC finding, and his ultimate

9

conclusion that the plaintiff was not disabled were flawed by his omission of the moderate limitations which he found existed. The Commissioner's position is not substantially justified. This Court will not, however, state as a matter of law that the plaintiff cannot do the jobs identified by the VE because of these moderate limitations, and is thus entitled to court-awarded benefits. The case should be remanded for further adjudication regarding his emotional impairments and their effect on his RFC. It is therefor respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 8] be GRANTED to the extent of remanding the case, and that the Commissioner's Motion for Summary Judgment [Doc. 12] be DENIED.[2]

                                    Respectfully submitted:

                                    s/ Dennis H. Inman
                                    United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).